

**JAMES S. RICHTER**
Of Counsel
(201) 874-7325 (m)
jrichter@midlige-richter.com

June 24, 2024

**BY ECF**

Honorable Tonianne J. Bongiovanni, U.S.M.J.
United States District Court
Clarkson S. Fisher Federal Building & U.S. Courthouse
Room 6052
402 E. State Street
Trenton, New Jersey 08608

> **Re:   *AstraZeneca Pharmaceuticals LP, et al.  v. Natco Pharma Limited, et al.***
> ***Civil Action No. 23 CV 796 (ZNQ)(TJB)(consolidated)***

Dear Judge Bongiovanni,

This firm, together with Rakoczy Molino Mazzochi and Siwik LLP, represents Defendants, Natco Pharma Limited and Natco Pharma Inc. ("Natco"), in the above-referenced matter.  With Hill Wallack LLP and Crowell & Moring LLP, counsel for Defendant Sandoz Inc. ("Sandoz") (Natco and Sandoz, together, "Defendants"), we respectfully submit this letter in connection with a discovery dispute that has arisen with respect to Defendants' request for Plaintiffs to produce: (i) assignments, licenses, and other agreements conferring rights in or to U.S. Patent Nos. 8,859,562 (the "562 patent") (D.I. 1-3), 8,071,579 (the "579 patent"), and 8,143,241 (the "241 patent"); and (ii) documents reflecting failed efforts to negotiate the 562 patent.  The parties have met and conferred as described further below and are at an impasse.  While Plaintiffs have agreed to produce a subset of category (i), they do not agree to produce the full scope requested and refuse to produce anything responsive to category (ii).  The requested documents are relevant and discoverable for multiple reasons as described below.

## I.   BACKGROUND AND SUMMARY OF REQUESTED DISCOVERY.

Plaintiffs filed this Hatch Waxman patent infringement suit based on Defendants' ANDAs seeking FDA approval of a generic version of Plaintiffs' Lynparza® product, which is used to treat various cancers.  The active ingredient in Lynparza® is olaparib, a member of a class of compounds known as poly (ADP-ribose) polymer ("PARP-1") inhibitors.  The 562 patent is listed in the Orange Book in connection with Lynparza® and purports to broadly cover methods of using any PARP-1 inhibitor to treat a range of cancers.  *See 562 patent* (D.I. 1-3) at claim 1.  Plaintiff University of Sheffield purports to own the 562 patent.  It licensed the patent to Plaintiff KuDOS, who then sublicensed it to Plaintiffs AstraZeneca and Merck.  AstraZeneca in turn markets

 

T. 908.626.0622   F. 908.626.0322   www.midlige-richter.com   info@midlige-richter.com   645 Martinsville Road   Basking Ridge, NJ 07920

Honorable Tonianne J. Bongiovanni, U.S.M.J.                    June 24, 2024
                                                                        Page 2

Lynparza®.  Plaintiffs assert that the use of Defendants' ANDA products would infringe the one asserted claim of the 562 patent.

Olaparib is not the only FDA-approved PARP-1 inhibitor for the treatment of cancer, and AstraZeneca is not its only sublicensee.  The FDA has approved four other PARP-1 inhibitors: Rubraca® (rucaparib), Akeega® (niraparib), Zejula® (niraparib) and Talzenna® (talazoparib). The 562 patent is listed in the Orange Book for three of those (Rubraca, Akeega and Zejula). Defendants believe The University of Sheffield and/or AstraZeneca license the 562 patent to the companies who market those three products.  The 562 patent, however, is *not* listed in the Orange Book for Talzenna.  Defendants believe the University of Sheffield and AstraZeneca tried but failed to license the 562 patent to Pfizer, the company that markets Talzenna.  And, as discussed below, Defendants believe Pfizer refused to take a license because it assigns little to no value to the 562 patent.

The 562 patent is also not the only patent related to the use of PARP-1 inhibitors to treat cancer.  Plaintiff KuDOS owns the 579 and 241 patents, which likewise purport to claim the use of any PARP-1 inhibitor for the same types of cancers covered by the 562 patent.  These patents are also listed in the Orange Book in connection with Lynparza as well as Rubraca, Akeega and Zejula (but, again, not Talzenna).  Defendants thus believe that at least Plaintiff KuDOS has given rights in the 579 and 241 patents to the entities that market Rubraca, Akeega and Zejula.

There thus exists a group of assignments, licenses and other agreements describing interests in the 562, 579 and 241 patents.  Natco asked for these documents in discovery, as well as documents reflecting negotiations about failed agreements.  Sandoz later joined Natco in these discovery requests.  The documents are relevant for several reasons described in more detail below:

1. **Scope of the 562 licenses.**  Licenses to the 562 patent reflect Plaintiffs' view of the scope of the asserted 562 patent claim.  If the scope is as broad as Defendants contend, then the patent is invalid for covering prior art uses of PARP-1 inhibitors.

2. **Terms of the 562 licenses.**  The terms of licenses to the 562 patent reflect the value other companies place on the patent.  For instance, licenses that require paying only a small royalty or no royalty at all reflect the low value licensees place on the 562 patent.  Documents concerning failed negotiations for licenses to the 562 patent may further emphasize the low value pharmaceutical companies place on the 562 patent.

3. **Standing to assert the 562 patent.**  Defendants are entitled to investigate whether the named plaintiffs have standing to assert the 562 patent.  If existing agreements reflect that non-parties have rights in the 562 patent in connection with olaparib, then Defendants may have a basis to challenge whether the court has subject matter jurisdiction over this suit.



Honorable Tonianne J. Bongiovanni, U.S.M.J.                    June 24, 2024
                                                                Page 3

4. **Double patenting over the 579 and 241 patents.** Defendants know that KuDOS is an assignee of these two patents and an exclusive licensee of the 562 patent. If KuDOS even arguably has all substantial rights in the 579 and 241 patents, then they should be available as double patenting references to invalidate the asserted claim of the 562 patent.

Natco initiated the meet and confer process in February. Since then, Natco and Plaintiffs have met and conferred multiple times via Zoom and have exchanged numerous letters, emails, and other correspondence regarding Plaintiffs' responses and positions. Throughout these discussions, Natco has narrowed its original requests in the spirit of seeking compromise and resolution without the Court's intervention. Despite these extensive meet-and-confer efforts, Natco has been unable to reach agreement with Plaintiffs regarding RFP Nos. 2-5. *See, e.g., Defendants' Requests* (Ex. A); *Plaintiffs' Responses* (Ex. B).[1] Instead, Plaintiffs have agreed to produce only assignment documents and license agreements between the entities *who are parties to this litigation* and only with respect to the 562 patent. Plaintiffs must produce *all* agreements concerning the 562, 579, and 241 patents, as well as documents reflecting failed negotiations for licenses to the 562 patent.[2]

To the extent Plaintiffs object to production based on burden or confidentiality, any such objection is illusory. The small, specific, discrete set of documents Defendants request poses no burden on Plaintiffs, and the Discovery Confidentiality Order in this litigation more than adequately resolves any confidentiality concerns.

## II.    LEGAL STANDARD

"[T]he rules governing discovery are broad and liberal." *Joe Hand Promotions, Inc. v. Forupk LLC*, No. CV 19-7970-RBK-KMW, 2020 WL 13833299, at *2 (D.N.J. Nov. 16, 2020). Thus, discovery may "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Stepanski v. Sun Microsystems, Inc.*, No. 10-2700 PGS, 2011 WL 8990579, at *18 (D.N.J. Dec. 9, 2011), *report and recommendation adopted,* 2012 WL 3945911 (D.N.J. Sept. 10, 2012). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

---

[1] The parties have reached agreement as to RFP No. 1.

[2] On Tuesday, June 18, Sandoz provided notice to Plaintiffs that it adopted Natco's discovery requests and will treat Plaintiffs' objections and responses thereto as having been served on Sandoz. On Thursday, June 20, Plaintiffs confirmed this treatment and served its objections and responses on Sandoz. Sandoz agrees with Natco's negotiations and compromise proposals to date and thus joins Natco in the requests set forth in this letter.



Honorable Tonianne J. Bongiovanni, U.S.M.J.                          June 24, 2024
                                                                          Page 4

The Court may compel discovery from a party that fails or refuses to produce requested documents. Fed. R. Civ. P. 37(a)(3), 37(a)(4). "[T]he party moving to compel discovery under Rule 37 ha[s] the initial burden to prove that the information sought [is] relevant. Once the movant has demonstrated the information sought is relevant, the burden shifts to the party resisting discovery to establish that the discovery of the requested information or documents is inappropriate." *Joe Hand*, 2020 WL 13833299, at *3. "Importantly, the party resisting discovery has the burden of clarifying and explaining its objections to provide support therefor." *Stepanski*, 2011 WL 8990579, at *18 (internal quotations marks omitted). In other words, "the person resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient." *Joe Hand*, 2020 WL 13833299, at *3; *see also, e.g., Ross-Tiggett v. Reed Smith, LLP*, No. CV 15-8083 (JBS/AMD), 2019 WL 13249702, at *2 (D.N.J. Mar. 26, 2019).

## III.    ARGUMENT

### A.    The Requested Documents are Relevant to Evaluating the *Scope* of the 562 Patent for Purposes of Invalidity Defenses.

The parties have a disagreement regarding the scope of claim 1 of the 562 patent. Defendants contend that claim 1 covers administering PARP-1 inhibitors (a) as a form of treatment by themselves as direct anti-cancer agents ("monotherapy") *and* (b) in combination with other therapeutic agents such as radiation, chemotherapy, or other drugs. *See, e.g., Defendants' Invalidity Contentions* at 181, 208, 231-32 (Ex. C). Plaintiffs contend that claim 1 of the 562 patent is limited only to (a) administering PARP-1 inhibitors as a monotherapy. *See, e.g., Plaintiffs' Responses to Invalidity Contentions* at 40 (Ex. D). This difference in positions is significant. Defendants contend that the 562 claim is invalid under either interpretation, but they have specific invalidity contentions directed to the situation in which the claim covers both monotherapy and non-monotherapy uses.

The requested license agreements are relevant because they may confirm Defendants' view of the claim scope. Documents already produced show that, outside the context of litigation, Plaintiffs view claim 1 of the 562 patent as covering both monotherapy and combination therapy. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Defendants should be able to assess whether other 562 license agreements for other PARP-1 inhibitors have the same or similar scopes that support Defendants' understanding of the patent's claim, and thus impact the invalidity analysis. *See, e.g., Middleton, Inc. v. Minn. Mining & Mfg. Co.*, 311 F.3d 1384, 1389 (Fed. Cir. 2002) ("If a contract supplies some insight into the understanding of skilled artisans at the time of invention, it may have some relevance to claim construction…."); *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1375-76 (Fed. Cir. 2004) (finding the "district court's refusal to consider …



evidence of defendants' knowledge and use of the term prior to patenting is relevant to show that the term was in use and had a discernible meaning to at least some persons practicing in the field"); *ASM Am., Inc. v. Genus, Inc.*, 401 F.3d 1340, 1347 (Fed. Cir. 2005) (relying on extrinsic evidence, including statements by Plaintiff's Chief Technology Officer regarding the scope of the claims of the asserted patent, for claim construction purposes); *In re Ikeda Food Rsch. Co.*, 758 F. App'x 952, 957-58 & n.7 (Fed. Cir. 2019) (citing *ASM*, 401 F.3d at 1347 (concluding that extrinsic evidence that post-dated the patent filing date nonetheless was helpful in determining how a PHOSITA would have understood the claim term at the time it was filed)); *Greenville Commc'ns, LLC v. Cellco P'ship*, No. 07-4222 MLC, 2012 WL 1656509, at *10 (D.N.J. May 10, 2012), *aff'd*, 505 F. App'x 957 (Fed. Cir. 2013) (relying on extrinsic evidence, including assignee's Product Statement and inventor's statements in NY Times article, for claim construction purposes); *Proctor & Gamble Co. v. CAO Grp., Inc.*, No. 1:13-CV-337, 2014 WL 2116994, at *4 & n.7 (S.D. Ohio May 21, 2014) (noting that "[a]n accused infringer's use of the disputed claim language is also relevant to whether the claim language has a discernible meaning and is therefore definite" and "[f]ailure to consider relevant extrinsic evidence in assessing definiteness constitutes error").

**B.      The Requested Documents are Relevant to Evaluating the *Terms* of the 562 Patent Licenses for Purposes of Invalidity Defenses.**

Defendants are also entitled to review existing licenses to the 562 patent because the terms of those agreements may reflect the low value companies place on the patent. ████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

Defendants believe other agreements will contain similar provisions. For example, the 562 patent is the subject of sub-license agreements between Plaintiff AstraZeneca and third-party entity, Tesaro, Inc., which were the subject of litigation in the United Kingdom (the "Tesaro Licensing Case"). *See, e.g., AstraZeneca UK Ltd. v. Tesaro, Inc.*, [2023] EWHC 803 (Ch) ¶¶ 1-2 (Ex. G). The Tesaro Licensing Case specifically discusses the "the scope of the claims in the Licensed Patents," certain uses of PARP inhibitors that "had the potential to infringe the Licensed Patents" or that "fell outside the claims of the Licensed Patents," and whether royalties were owed under the license agreements for "total sales of relevant products for use as cancer treatments," or "only on sales that are for uses *claimed or covered by the Licensed Patents*." *Id.* ¶¶ 2, 32-62, 137-43. Further still, the case mentions that "Tesaro briefly considered whether it should challenge the validity of the Licensed Patents," and that it did not do so in part because it was a young company that did not want to become embroiled in patent litigation for various business-related reasons. *Id.* Defendants should have access to that agreement to understand the terms that Tesaro agreed to and



Honorable Tonianne J. Bongiovanni, U.S.M.J.                                June 24, 2024
                                                                                Page 6

how those may reflect the value that third parties place on the 562 patent, which may be relevant to Defendants' invalidity defenses. *See, e.g., Wyeth v. Orgenus Pharma Inc.,* No. 09-3235 FLW, 2010 WL 4117157, at *4 (D.N.J. Oct. 19, 2010) (granting motion to compel production of certain license agreements and noting that courts have routinely recognized that license agreements relating to the patent-in-suit are discoverable); *Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 582-83, 585 (N.D. Cal. 2008) (ordering production of "all documents related to the negotiation of licenses of, and licensing of, the patents-in-suit with any third party" as reasonably calculated to lead to relevant, admissible evidence).

Defendants also have reason to believe some companies using the 562 patent technology have refused to take a license to it. In particular, Plaintiff Sheffield contends that the 562 patent led to the discovery of the FDA-approved PARP-1 inhibitor Talzenna, marketed by Pfizer. *See Sheffield Website* (Ex. H) ("The discovery was patent-protected and licensed to KuDOS, a pharmaceutical company later acquired by AstraZeneca, who continued the development process and undertook successful clinical trials. This resulted in the development of three drugs called Lynparza, Zejula and Talzenna."). Yet Pfizer does not list the 562 patent in the Orange Book for Talzenna. Defendants suspect this is because Pfizer declined to take a license to the 562 patent. As Defendants now allege in this case, Pfizer's own patents *invalidate* the 562 patent. Defendants are thus entitled to determine whether Pfizer took no license in the 562 patent because it communicated to Plaintiffs that the 562 patent is invalid.

**C.      The Requested Documents are Relevant to Standing.**

All licenses, assignments, and other agreements concerning the rights in the 562 patent are also relevant to standing. *See, e.g., Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229-36 (Fed. Cir. 2019) (noting that the Court looks at the totality of the agreements to determine which parties have standing); *Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1360-61 (Fed. Cir. 2010) (listing numerous rights that should be examined for purposes of evaluating standing). Plaintiffs' compromise to produce agreements between the entities who are parties to this litigation "sufficient to show that the Plaintiffs have all substantial rights to the 562 patent" leaves the picture half painted because it tells Defendants only what rights *Plaintiffs* have in the 562 patent. It does not provide any insight into whether there are any other entities not a party to this litigation that have substantial (or any other) rights in the 562 patent as concerns olaparib. Defendants are entitled to make that determination for themselves based on all documents that relate to ownership rights or other interests in the 562 patent. As such, Plaintiffs must produce *all* agreements concerning rights in the 562 patent.



**D.      The Requested Documents are Relevant to Obviousness-Type Double Patenting.**

Finally, documents describing ownership and other substantial rights in the 579 and 241 patents are relevant to the status of those patents as potentially invalidating references for purposes of Defendants' double patenting analysis.  While the 562 patent is not assigned to the same entity as the 579 and 241 patents, evaluation of all licenses and other agreements concerning the 562, 579, and 241 patents may prove that the same entity—possibly Plaintiff KuDOS—does hold *all substantial rights* to all three patents.  *See e.g., Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1057-59 (Fed. Cir. 2020) (holding that "the 'all substantial rights' test can be informative in determining common ownership in the obviousness-type double patenting context").  If true, the 579 and 241 patents would be available as invalidating references for purposes of obviousness-type double patenting.  *Id.*  Thus, any agreements concerning the 562, 579, and 241 patents are relevant for purposes of an obviousness-type double patenting defense.

## IV.    CONCLUSION

For the reasons above, Defendants submit that Plaintiffs should be compelled to produce (i) assignments, licenses, and other agreements conferring rights in or to the 562, 579 and 241 patents; and (ii) documents reflecting failed efforts to negotiate licenses to the 562 patent.

We thank Your Honor for your consideration and assistance in this matter.  Should Your Honor have any questions, we are available at your convenience.

Respectfully submitted,

s/ James S. Richter

James S. Richter

Cc: All Counsel of Record (by ECF)

