**GIBBONS**

CHARLES H. CHEVALIER
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4611 Fax: (973) 639-6263
cchevalier@gibbonslaw.com

July 3, 2024

**VIA ECF**

Honorable Tonianne J. Bongiovanni, U.S.M.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608



>    Re:    ***AstraZeneca Pharm. LP et al. v. Natco Pharma Limited et al.***
>           **Civil Action No.: 3:23-cv-796 (RK) (TJB) (CONSOLIDATED)**

Dear Judge Bongiovanni:

Our firm, together with Williams & Connolly LLP, represents Plaintiffs AstraZeneca Pharmaceuticals LP, AstraZeneca UK Limited, AstraZeneca AB, KuDOS Pharmaceuticals Limited ("KuDOS"), The University of Sheffield, and MSD International Business GmbH (collectively, "Plaintiffs") in the above-referenced matter. Defendants Natco Pharma Limited and Natco Pharma Inc. ("Natco") and Defendant Sandoz Inc. ("Sandoz") (collectively, "Defendants") submitted a letter to the court on June 24, 2024 relating to an alleged discovery impasse (Dkt. No. 91). We respectfully submit this response letter in compliance with the Court's Text Order dated June 25, 2024 (Dkt. No. 93).

After submission of Defendants' letter, the parties met and conferred on June 27, 2024, and narrowed the dispute to three categories of documents that Defendants contend should be produced:

(1) licenses to U.S. Patent No. 8,859,562 ("the '562 patent") relating to products *other than* the olaparib products at issue in this litigation;

(2) licenses relating to two patents that have not been challenged by any of the Defendants, have not been asserted by Plaintiffs in this case, and are owned by KuDOS and a third party, the Institute for Cancer Research, U.S. Patent No. 8,071,579 and 8,143,241 ("the ICR Patents"); and

(3) documents relating to "failed efforts" by Plaintiffs to license the '562 patent, ██████ ████████████████████████████████████████████████████

The Court should reject Defendants' attempts to obtain the first two categories of documents because they are irrelevant to any party's claim or defense in this case. The third set of documents does not exist, and thus Defendants' request is moot.

GIBBONS P.C.

July 3, 2024
Page 2

Plaintiffs respectfully submit that Defendants' request to compel production of all three categories of documents should be denied.

## I.      Licenses To The '562 Patent Relating To Products Other Than Olaparib.

This is a Hatch-Waxman patent infringement case that arises out of Defendants' ANDA submissions to FDA to market generic versions of Plaintiffs' Lynparza® (olaparib tablets) product. The '562 patent is one of the patents listed in the FDA Orange Book for Lynparza®.  Plaintiffs have already produced all exclusive licenses to the '562 patent that relate to Lynparza® or olaparib, which establish conclusively Plaintiffs' standing to bring this case and which are the only licenses relevant to any party's claim or defense.

There are other licenses to the '562 patent that cover pharmaceutical products with different active pharmaceutical ingredients ("API") that also target PARP-1, which is a protein inhibited by the olaparib API in Lynparza®. ███████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████  However, it is undisputed that those products are not at issue in this ANDA case, those APIs are not at issue in this ANDA case, and their manufacturers are not parties to this action.  Yet Defendants' requests at issue seek those irrelevant licenses.

Defendants have articulated two theories for why these licenses may be relevant: (1) because they allegedly relate to a claim construction dispute about whether the claim of the '562 patent is limited to monotherapy, and (2) because they allegedly relate to "invalidity defenses." Neither of these rationales passes muster or justifies burdening Plaintiffs and their third-party licensees with a fishing expedition into highly confidential licensing arrangements.

With respect to the claim construction argument, Defendants' letter proceeds from the false premise that there is a dispute where none exists.  Defendants contend that Plaintiffs have argued that the claim of the '562 patent is limited to monotherapy with olaparib and that Defendants believe the licenses are relevant as allegedly contradicting that premise.  But Plaintiffs do not contend that the claim of the '562 patent is limited to olaparib monotherapy, and the portion of Plaintiffs' contentions cited in Defendants' letter is not to the contrary.  Dkt. No. 91, Ex. D, Plaintiffs' Response to Invalidity Contentions at 40.  Thus, the alleged claim construction dispute is not a dispute, and the licenses Defendants seek are not relevant on that basis.

In any event, even if there were a claim construction dispute, the scope of a license is a question of contract interpretation that is generally irrelevant to the distinct legal question of claim construction.  *See Middleton, Inc. v. Minn. Mining & Mfg. Co.*, 311 F.3d 1384, 1389 (Fed. Cir. 2002) ("The meaning of a patent term . . . is not subject to revision or alteration by subsequent contract . . . .").  The rare exception to this rule is for a situation in which a contract sheds some light on interpretation of a claim term *at the time of invention*, not at the subsequent time of the

GIBBONS P.C.

July 3, 2024
Page 3

contract.  *See id.* ("If a contract supplies some insight into the understanding of skilled artisans *at the time of invention*, it *may* have some relevance to claim construction.") (emphasis added).  The licenses in dispute post-date the invention and thus are not relevant to how the POSA would interpret the claims at the time of invention.

With respect to relevance to invalidity, Plaintiffs are not relying on licensing or commercial success as objective indicia of nonobviousness of the '562 patent.  Thus, Plaintiffs have not put these licenses, which relate to products that do not contain the olaparib API that is the subject of Defendants' ANDAs in this case, at issue.

Defendants contend that the fact that other branded pharmaceutical companies have taken licenses to the '562 patent is somehow evidence that the claim of the '562 patent is *invalid* because allegedly these other licenses have terms that are insufficiently favorable to Plaintiffs.  This argument turns the law of obviousness on its head.

Defendants' argument appears to assume that if the licensing terms to the '562 patent were insufficiently favorable, that fact would indicate a lack of objective indicia of nonobviousness and thus militate toward a finding of obviousness.  But that argument is simply wrong under binding Federal Circuit precedent.  Evidence of objective indicia "can only further support nonobviousness"; "the absence of objective evidence . . . is a neutral factor," not a factor that can support an obviousness argument.  *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478 (Fed. Cir. 1998) (quotations and citations omitted); *see also Grecia v. Discover Fin. Servs., Inc.*, 2018 WL 11196598, at *1 (N.D. Ill. June 7, 2018) (denying motion to compel on an RFP designed to elicit evidence of the absence of commercial success because "any evidence of [the plaintiff's] lack of commercial success would not support an inference of obviousness" and the plaintiff "has said he will not rely on [] commercial success").  Thus, the existence of licenses to a patent is evidence of *nonobviousness*, not evidence of invalidity.  *See, e.g.*, *Impax Lab'ys Inc. v. Lannett Holdings Inc.*, 893 F.3d 1372, 1381 (Fed. Cir. 2018).  But regardless, Plaintiffs are not relying on these licenses to support their nonobviousness arguments here.  And Defendants cite no case for their novel legal proposition that they are entitled to examine Plaintiffs' confidential agreements with third parties for purposes of arguing that these licenses with multiple third-party pharmaceutical companies somehow show the patent is invalid.

The cases cited by Defendants are not analogous to their request.  *Wyeth* involved a request for production of settlement agreements with *other generic defendants* who had ANDAs on the *same product* and *same API*, and thus all of the agreements directly implicated the product at issue.  *See Wyeth v. Orgenus Pharma Inc.*, 2010 WL 4117157, at *4 (D.N.J. Oct. 19. 2010).  Also, in *Wyeth*, the license and settlement agreements were directly relevant to two other issues in the case—the computation of the plaintiff's damages and the defendants' patent misuse defense—that are manifestly not at issue in this case.  *Id*.

GIBBONS P.C.

July 3, 2024
Page 4

*Phoenix Solutions* is even further off the mark.  There, the plaintiff "produced to [the defendant] over thirty letters [the plaintiff] sent to third-party companies reflecting initial offers to license certain of [the plaintiff's] patents."  *Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 581, 585 (N.D. Cal. 2008).  The defendant then sought to compel production of all similar "license/settlement negotiations concerning the patents-in-suit."  *Id*. at 581.  In granting this request, the court relied on a determination that the plaintiff's communications did not "involve situations where the parties held a legitimate and explicit expectation that the [licensing and] settlement documents would remain confidential."  *Id*. at 583.  *See also MCS Music Am., Inc. v. Yahoo!, Inc.*, 2010 WL 11693565, at *4 (M.D. Tenn. Aug. 17, 2010) (rejecting a party's effort to extend *Phoenix Solutions* and noting that "discovery of documents reflecting settlement negotiations . . . [is] clearly prohibited" by *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003)); *Cambria Co. v. Hirsch Glass Corp.*, 2023 WL 6387680 (D.N.J. Sept. 29, 2023) (applying *Goodyear* to conclude that settlement negotiations are confidential).  Here, by contrast, the licenses requested by Defendants reflect confidential commercial arrangements in the same market in which Defendants seek to compete.

In any event, Plaintiffs have already produced all exclusive licenses to the '562 patent that relate to olaparib, the product at issue in this case.  This court has recognized that "discovery is not without bounds," and it "will not permit parties to engage in fishing expeditions."  *Eisai Inc. v. Sanofi-Aventis U.S.,* LLC, 2011 WL 5416334, at *8 (D.N.J. Nov. 7, 2011) (citing *MacDermid Printing Sols., L.L.C. v. E.I. du Pont de Nemours & Co.*, 2008 WL 323764, at *1 (D.N.J. Feb. 5, 2008)).  In cases involving settlement negotiations, which have been treated similar to licensing efforts, *see Phoenix Sols.*, 254 F.R.D. at 581, "[p]arties seeking to discover such communications must make a heightened, more particularized showing of relevance . . . and [demonstrate that the evidence is] calculated to lead to the discovery of admissible evidence," *Eisai*, 2011 WL 5416334, at *8 (quoting *Ford Motor Co. v. Edgewood Props.*, 257 F.R.D. 418, 423 (D.N.J. 2009)); *see, e.g.*, *MacDermid Printing Sols.*, 2008 WL 323764, at *1 (denying party's motion to compel production of documents that "might" uncover evidence); *Claude P. Bamberger Int'l, Inc. v. Rohm & Haas Co.*, 1998 WL 684263 (D.N.J. Apr. 1, 1998) (denying a party's efforts to compel production of documents that were not relevant to the action).  Defendants must also show that these documents are proportional to the case, considering whether the burden of the proposed discovery outweighs its likely benefit.  *See* Letter Order, *Catalyst Pharms., Inc. v. Teva Pharms., Inc.*, No. 2:23-cv-1190 (D.N.J. May 3, 2024), Dkt. No. 124.  Defendants have made no such showings—neither of their theories of relevance are cognizable and thus the other documents Defendants seek are not relevant to the action, are not likely to lead to the discovery of admissible evidence, and are not proportional to the needs of the case.

Although third-party confidentiality concerns may not be sufficient in and of themselves to deny production of otherwise discoverable documents, *see Wyeth* at *4, the confidentiality interests of Plaintiffs and their third-party licensees are certainly relevant to the question of whether production of the licenses is proportional to the needs of the case in view of the lack of relevance to any issue and thus minimal benefit in resolving the parties' disputes, Fed. R. Civ. P. 26(b)(1).

GIBBONS P.C.

July 3, 2024
Page 5

Because Defendants have not articulated any basis for the relevance of the other products licenses, because their production would be prejudicial to Plaintiffs and their third-party licensees, and because their production would not be proportional to the needs of the case, Defendants' request should be denied.

**II.    Licenses Relating To The Unasserted ICR Patents.**



The only articulated relevance of the ICR Patents is allegedly to a possible double patenting argument against the '562 patent. For there to be double patenting between the '562 patent and the ICR Patents, there must be common ownership or a common inventor. But, Defendants have all of the information necessary to determine that neither of these is the case.

There is no common inventor. Defendants argue in their letter that there is common ownership. The patents are assigned to two different entities, the '562 to the University of Sheffield, and the ICR Patents to ICR and KuDOS. To get around that fact, Defendants instead contend that Plaintiff KuDOS Pharmaceuticals may have all substantial rights in all three patents so as to establish co-ownership. *See Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1057–59 (Fed. Cir. 2020). But that is simply incorrect.



Thus, it is irrelevant what rights KuDOS has under the ICR Patents, because even if KuDOS had all substantial rights in those patents, there would be no double patenting because it does not have all substantial rights in the '562 patent. *See Immunex*, 964 F.3d at 1057–59. Accordingly, Defendants' sole reason for seeking the licenses to the ICR Patents fails, and Defendants' request should be rejected.

GIBBONS P.C.

July 3, 2024
Page 6

**III.    Documents Relating To "Failed Efforts" To License The '562 Patent.**

Defendants contend that Plaintiffs should produce documents relating to "failed efforts" to license the '562 patent, ███████████████████████████████████████████ But as Plaintiffs explained to Defendants on the June 27, 2024, meet and confer, no such documents exist █████████████████████████████ Moreover, there are no "failed efforts" to license any of the other approved PARP inhibitor products or any other product. ████████████████████████████████████████████████████████████ ██████████████████████████ Thus, this portion of Defendants' request is moot.

**\* \* \***

For the reasons above, Defendants' requests to compel production should be denied in their entirety.

We thank Your Honor for consideration and assistance in this matter.  Should Your Honor have any questions, we are available at your convenience.

Respectfully submitted,

 s/ Charles H. Chevalier
Charles H. Chevalier

Attachment
cc: All counsel of record (via ECF and email)