

**JAMES S. RICHTER**
Of Counsel
(201) 874-7325 (m)
jrichter@midlige-richter.com

June 6, 2025

**BY ECF**

Honorable Tonianne J. Bongiovanni, U.S.M.J.
United States District Court
Clarkson S. Fisher Federal Building & U.S. Courthouse
Room 6052
402 E. State Street
Trenton, New Jersey 08608

Re:     *AstraZeneca Pharmaceuticals LP, et al.  v. Natco Pharma Limited, et al.*
        *Civil Action No. 23 CV 796 (RK)(TJB)(consolidated)*

Dear Judge Bongiovanni,

This firm, together with Rakoczy Molino Mazzochi Siwik LLP, represents Defendant Natco Pharma Limited ("Natco") in the above-referenced matter.  We respectfully submit this letter on behalf of all Defendants in connection with a discovery dispute.  Defendants seek the Court's assistance in compelling production or logging of documents responsive to a narrowly tailored set of document requests related to an obviousness-type double patenting ("ODP") defense at the center of this litigation.

As explained in more detail below, Defendants contend that the asserted '562 patent is invalid for ODP over U.S. Patent Nos. 7,351,701 and 7,531,530 (together, "'701 and '530 patents").  The ODP defense is premised in part on Dr. Thomas Helleday being an inventor on all three patents, which permits the assertion that the '562 patent is invalid in view of the '701 and '530 patents.  Defendants asserted this ODP challenge because Dr. Helleday was listed as an inventor on the original patent application filings and on all three issued patents for the *entire life* of the now-expired '701 and '530 patents, and he remains an inventor on the '562 patent.  But on the day the '701 and '530 patents expired in July 2024, a request was made to the Patent Office to administratively remove him as an inventor from those patents.  He was symbolically removed from those two patents months later in September 2024, after they expired.

The circumstances of this unusual post-expiration inventorship change raise serious questions about litigation gamesmanship.  Plaintiffs now contend that the ODP defense to the '562 patent is unavailable because Dr. Helleday is no longer an inventor on the '701 and '530 patents.  Defendants disagree.  He was an inventor on those patents for their entire existence and was then

 

removed for what Defendants believe to be improper reasons. That means Dr. Helleday is not entitled to an unjustified time-wise extension of the claims of those patents via the obvious variants claimed in the ’562 patent. Yet, Plaintiffs are hindering Defendants’ investigation into whether Dr. Helleday was improperly removed as an inventor. ODP is an equitable defense, and Defendants are entitled to full discovery about why Plaintiffs, Dr. Helleday himself, and every other party involved recognized his role as an inventor on the ’701 and ’530 patents during their life, then suddenly disavowed his involvement literally on the day they expired, and did so in a manner that Plaintiffs now (wrongly) suggest guts the ODP defense.

Plaintiffs outright refuse to produce much of what Defendants have asked for in a narrowly tailored set of document requests designed to learn the circumstances of the plan to remove Dr. Helleday as an inventor upon expiration of the ’701 and ’530 patents. The parties have met and conferred and are at an impasse. Defendants thus seek the Court’s assistance to obtain this necessary discovery.

## I. FACTUAL BACKGROUND.

Plaintiffs filed this consolidated Hatch-Waxman patent infringement suit based on Defendants’ ANDAs seeking FDA approval of generic versions of Plaintiffs’ Lynparza® product, which is used to treat various cancers. One of the asserted patents in this litigation is the ’562 patent, a method of treatment patent which purports to broadly cover methods of using compounds called PARP-1 inhibitors to treat a range of cancers. (*See 562 patent* (D.I. 1-3) at claim 1.)

### A. Lead-up to the issuance of the ’562 patent.

The application leading to the ’562 patent was filed on July 23, 2004. (*See id.* at cover.) The sole named inventor of the ’562 patent is Thomas Helleday. (*See id.*) The University of Sheffield, where Dr. Helleday worked at the time, was the assignee. (*See id.*) That very same day, the applications that became the ’701 and ’530 patents were also filed. (*See, e.g.*, *701 patent* (Ex. A) at cover; *530 patent* (Ex. B) at cover.) Dr. Helleday was also named as an inventor on those applications, alongside a researcher at Newcastle University, Dr. Nicola Curtin. (*See, e.g.*, *701 FH* (Ex. C) at SHEFFIELD-17399-401[1]; *530 FH* (Ex. D) at SHEFFIELD-16575-78, 16602-04, 16634.)

That Dr. Helleday was named as an inventor on these three patents is not surprising. He had been collaborating with Dr. Curtin and her colleagues at Newcastle for over a year prior to the filing of these patent applications. (*See, e.g., Emails* (Ex. E) at SHEFFIELD-1444, 3348, 13339-41, 18281, 18285; *Curtin 2020* (Ex. F) at DEFS-OLAP-475-77.) In fact, at that time, it was Dr.

[1] Throughout this document, leading zeros from Bates-numbered document ranges have been omitted.



Honorable Tonianne J. Bongiovanni, U.S.M.J.                           June 6, 2025
                                                                        Page 3

Helleday who was considered the lead inventor, and it was Dr. Helleday who "nicely suggested" that Dr. Curtin be included as an additional inventor on the patents. (*See Emails* (Ex. E) at SHEFFIELD-18281.)

And at no point during the prosecution of any of these three patents was there any suggestion that Dr. Helleday was not properly named as an inventor for any of them. Plaintiffs had ample opportunity to raise that issue if they actually thought he was improperly named. In particular, the PTO made an ODP rejection in October 2009 over the '701 and '530 patents that also relied on Dr. Helleday being a common inventor. (*See, e.g., 562 FH* (Ex. G) at AZ-LYNPARZA-61685-86; *see also id.* at AZ-LYNPARZA-62319 (Examiner noting that "at least one common inventor is/are present").) At that time, when memories were fresh and the alleged inventions had just been conceived, Plaintiffs could have argued that he was not properly named as an inventor on the '701 and '530 patents, which would have overcome the ODP rejection. They never suggested he was not properly named on any application. Instead, they acknowledged that Dr. Helleday was an inventor, fought the ODP rejection on the merits, and won issuance of the patent. (*See, e.g., 562 FH* (Ex. G) at AZ-LYNPARZA-61885-87, 62346-48, 62362-63, 62806-07, 62969; *see also, e.g., id.* at AZ-LYNPARZA-61882, 62346 (acknowledging "the common inventor (Helleday)", 62362-63, 62806-07 (acknowledging "co-inventors Thomas Helleday and Nicola Curtin" and "joint invention of Thomas Helleday and Nicola Curtin").)

### B.    Plaintiffs and Pfizer benefit from the issuance of all three patents.

From the date of these patent filings in 2004 to the expiration of the '701 and '530 patents in 2024, Dr. Helleday remained listed as an inventor on all three patents. He and others associated with the patent greatly benefited while he was an inventor. For example, Dr. Curtin received over $800,000 when Newcastle sold its royalty rights for Rubraca®, alleged to be covered by these patents. (*See Oxford 2022* (Ex. H) at 3; *Newcastle 2019* (Ex. I) at 1-3; *Orange Book 2020* (Ex. J) at 3-4.) Defendants expect discovery will reveal that Dr. Helleday benefited financially as well. And Pfizer, an assignee of these patents since at least 2006, (*see 701 Assignments* (Ex. K); *530 Assignments* (Ex. L)), licensed its rights to Rubraca® in 2011, receiving milestone payments of $82.5 million between 2016-2020 and a total potential milestone payment sum of $170 million. (*See, e.g., Clovis 2022 Form 10-Q* (Ex. M) at § 12 ("License Agreements").) This undoubtedly included rights to the '701 and '530 patents, which were listed in FDA's Orange Book as covering Rubraca® until at least December 2020. (*See, e.g., Orange Book 2020* (Ex. J) at 3-4.) In 2023, Clovis then sold its rights to Rubraca® for $70 million with an additional potential $65 million in milestone payments to Pharmaand GmbH, who currently markets the drug. (*See, e.g., Clovis 2023* (Ex. N); *Orange Book Rubraca* (Ex. O).)

Never once did anyone with an interest in the '701 and '530 patents—including Pfizer, Pharmaand, Dr. Curtin, or Dr. Helleday—suggest that Dr. Helleday was not properly listed as an



Honorable Tonianne J. Bongiovanni, U.S.M.J.                    June 6, 2025
                                                                     Page 4

inventor on any of these patents.  To the contrary, Drs. Helleday and Curtin proudly advertised the opposite:

- **In a May 2007 addendum** to their 2005 Nature article, Dr. Helleday and Dr. Curtin stated that they were "named inventors" on the patent application leading to the '701 patent.  (*See Nature Addendum* (Ex. P) at DEFS-OLAP-1273.)
- **In her 2020 article**, Dr. Curtin discussed her "collaboration" with Dr. Helleday and explained how that collaboration resulted in filing of the patent application that led to the '530 patent.  (*See Curtin 2020* (Ex. F) at DEFS-OLAP-475-77 ("Understanding the importance of the synthetic lethality of PARPi in HRD cancers, Thomas Helleday was keen to patent *our findings* before publication. Following meetings with Cancer Research Technology, *we* undertook work to protect rucaparib and these data were included in the patent (WO 2005/012305 A2) filed 16th April 2004.") (emphasis added).)
- **In 2022**, an article regarding Dr. Curtin's career acknowledged that her "collaboration with Thomas Helleday" resulted in "their shared patent around tricyclic PARP inhibitors."  (*See Oxford 2022* (Ex. H) at 3.)
- **Even as of June 6, 2025**, Dr. Curtin's "staff profile" page on the Newcastle University website lists "Helleday T and Curtin NJ" as the inventors of the patent application leading to the '530 patent.  (*See Curtin Staff Profile* (Ex. Q) at 5.)

## C.    Things change when Defendants re-raise the ODP defense in this litigation.

Plaintiffs became aware that Defendants were raising an ODP defense based on Dr. Helleday being a common inventor of the '701 and '530 patents ODP defense as early as December 2022, ███████████████████████████████████████████████ No Plaintiff or other entity suggested within the next 18 months that Dr. Helleday was not properly named as an inventor or that the ODP defense was unavailable because he was not a common inventor.

Defendants re-raised the ODP defense in their May 2024 invalidity contentions and addressed the merits shortcomings of the PTO's ODP analysis that led to the improper issuance of the '562 patent over the '701 and '530 patents.  (*See, e.g.*, *562 INV Contentions, May 2024* (Ex. S) at 158.)  The first time *anyone* alluded to Dr. Helleday not being an inventor of the '701 and '530 patents was in Plaintiffs' responses to Defendants' '562 patent invalidity contentions.  At that time, Plaintiffs made the conclusory allegation that "Thomas Helleday is not an appropriate named inventor" on the '701 and '530 patents.  (*See, e.g.*, *Responses to 562 INV Contentions, May 2024* (Ex. T) at 20.)  However, because the inventorship correction paperwork had not yet been filed with the PTO, this raises the question of how Plaintiffs knew to make such an argument.  They made no such argument during prosecution of the '562 patent or during the nearly 20 years following that.  Absent some inside discussions or other knowledge regarding the upcoming inventorship correction by the owner of the soon-to-expire '701 and '530 patents, any allegation



by Plaintiffs that Dr. Helleday was not an inventor of the '701 and '530 patents would have been purely speculative, factually baseless, and contrary to their prior positions.

Then, on July 23, 2024—the *day* the '701 and '530 patents expired—the inventors of these patents, Drs. Helleday and Curtin, along with the assignees of these patents—filed the inventorship correction paperwork with the PTO. Notably, a request to correct inventorship at the PTO is a purely administrative, ministerial, non-adversarial process—*i.e.*, it does not require *any* factual proof to support the requested correction. Instead, all that was needed were signed "statements" from the inventors and assignees agreeing to the correction. (*See 701 FH* (Ex. C) at SHEFFIELD-18265-75; *530 FH* (Ex. D) at SHEFFIELD-17315-25.) The PTO approved the request weeks later (after the '701 and '530 patents had already expired) and issued a certificate of correction removing Dr. Helleday as an inventor on September 10, 2024. (*See 701 FH* (Ex. C) at SHEFFIELD-18276-80; *530 FH* (Ex. D) at SHEFFIELD-17326-30.)

**D.    Plaintiffs refuse to produce the full scope of discovery concerning the inventorship change.**

Defendants then served a small set of narrowly tailored and specifically targeted document requests concerning the same. Plaintiffs' original responses flatly indicated that they would not search for or produce *any* documents in response to Defendants' requests other than those that had already been produced from the 2004 time period that led to the conclusion that Dr. Helleday *was* a named inventor. (*See Plaintiffs' Responses to RFP Nos. 116-133* (Ex. U) at 5-19.)

The parties have met and conferred via Zoom and have exchanged numerous letters and emails regarding the parties' positions, and Plaintiffs proposed as a "compromise" to search for and produce the following subset of documents:

> Non-privileged communications during the past 24 months that refer to the '701 and '530 patents between Pfizer Inc. and/or Nicola Curtin, on the one hand, and AstraZeneca Pharmaceuticals LP, AstraZeneca UK Limited, AstraZeneca AB, KuDOS Pharmaceuticals Limited, The University of Sheffield, and/or MSD International Business GmbH, on the other hand, located after a reasonable search of the files of employees of those entities.

(*Plaintiffs' April 29 Letter* (Ex. V) at 2.) Plaintiffs' "compromise" seeks to limit the categories of documents they will agree to search for – presumably to avoid the persons who actually made these communications and/or time frame in which they were made. For example, this "compromise" is insufficient, at least because it:



Honorable Tonianne J. Bongiovanni, U.S.M.J.                                      June 6, 2025
                                                                                        Page 6

(i)  excludes communications with Thomas Helleday—the key figure in all of this—who is not currently an employee of any Plaintiff;[2]

(ii)  excludes documents more than 24 months old, notwithstanding that discussions about this inventorship may have been taking place anytime since 2004;

(iii)  excludes any search for privileged documents and the production of a privilege log;

(iv)  improperly requires express reference to the '701 and '530 patents, when discussions relevant to inventorship may not use those terms;

(v)  improperly narrows the search to the files of Pfizer Inc., when other Pfizer-related entities may also have been involved in the communications; and

(vi)  agrees to search only employee files, and not non-custodial files.

The insufficiency of Plaintiffs' "compromise" is illustrated by the fact that, to date, they have not produced *any* communications between Plaintiffs, Dr. Helleday, and Dr. Curtin regarding the 2024 inventorship statements to the PTO.  It is implausible to suggest that those statements were reviewed, signed, and returned by Drs. Helleday and Curtin without a single email or other correspondence taking place between Plaintiffs and Dr. Curtin and/or Dr. Helleday.  Such a suggestion is even more implausible considering that Plaintiffs have thus far refused to represent that no such communications exist, and that Plaintiffs themselves have suggested that, at minimum, responsive privileged communications *do exist*, potentially in "great number[s]." (*Plaintiffs' April 29 Letter* (Ex. V) at 2 (alleging that Defendants' requests are "burdensome" because they "likely encompass a great number of privileged communications" and refusing to search for same).)  This further underscores the importance of this issue and the relevance of these requested documents.  (*See Defendants' May 6 Letter* (Ex. W) at 2.)

Plaintiffs are the ones with access to the documents and persons who know about the communications made about changing inventorship of the '701 and '530 patents.  Defendants should not be required to pre-agree to cabin discovery over the narrow issue of the change in inventorship to specific persons or subcategories of information as demanded by Plaintiffs. Defendants thus ask the Court to compel Plaintiffs to produce (i) all nonprivileged documents in their possession, custody, or control concerning the inventorship of the '701 and '530 patents and the impact of the same on Defendants' ODP defense—*i.e.*, the documents sought in Defendants' RFP Nos. 116-133; and (ii) a privilege log of all responsive documents withheld for privilege.

## II.    LEGAL STANDARD

"[T]he rules governing discovery are broad and liberal." *Joe Hand Promotions, Inc. v. Forupk LLC*, No. CV 19-7970-RBK-KMW, 2020 WL 13833299, at *2 (D.N.J. Nov. 16, 2020). Thus, discovery may "encompass any matter that bears on, or that reasonably could lead to other

---

[2] Plaintiffs have suggested that Dr. Helleday must be contacted through Plaintiffs' counsel. (*See Plaintiffs' Initial Disclosures* (Ex. X) at 2-3.)



matter that could bear on, any issue that is or may be in the case." *Stepanski v. Sun Microsystems, Inc.*, No. 10-2700 PGS, 2011 WL 8990579, at *18 (D.N.J. Dec. 9, 2011), *report and recommendation adopted*, 2012 WL 3945911 (D.N.J. Sept. 10, 2012). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The Court may compel discovery from a party that fails or refuses to produce requested documents. Fed. R. Civ. P. 37(a)(3), 37(a)(4). "[T]he party moving to compel discovery under Rule 37 ha[s] the initial burden to prove that the information sought [is] relevant. Once the movant has demonstrated the information sought is relevant, the burden shifts to the party resisting discovery to establish that the discovery of the requested information or documents is inappropriate." *Joe Hand*, 2020 WL 13833299, at *3. "Importantly, the party resisting discovery has the burden of clarifying and explaining its objections to provide support therefor." *Stepanski*, 2011 WL 8990579, at *18 (internal quotations marks omitted). In other words, "the person resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient." *Joe Hand*, 2020 WL 13833299, at *3; *see also, e.g.*, *Ross-Tiggett v. Reed Smith, LLP*, No. CV 15-8083 (JBS/AMD), 2019 WL 13249702, at *2 (D.N.J. Mar. 26, 2019).

## III.    ARGUMENT

None of Plaintiffs' arguments support withholding the requested discovery when applying these standards.

*First*, Plaintiffs argue that the requested documents are not relevant because Dr. Helleday is now not listed as an inventor on the '701 and '530 patents, and the ODP defense is thus unavailable to Defendants. But whether he is an inventor, and whether the ODP defense is available, are contested issues. Defendants argue he *is* an inventor of the '701 and '530 patent claims, and he undisputedly was named as an inventor during the life of those patents. Those circumstances mean neither Plaintiffs nor Dr. Helleday are entitled to a time-wise extension of the claims of those patents via the obvious variants claimed in the asserted '562 patent. Preventing that outcome is *precisely* the purpose of the judge-made ODP doctrine. *See In re Cellect*, 81 F.4th 1216, 1226 (Fed. Cir. 2023) ("ODP is intended to prevent a patentee from obtaining a time-wise extension of patent for the same invention or an obvious modification thereof and *prevents an inventor from claiming a second patent for claims that are not patentably distinct from the claims of a first patent*. A crucial purpose of ODP is to prevent an inventor from securing a second, later-expiring patent for non-distinct claims.") (emphasis added, internal quotation marks omitted); *see also In re Hubbell*, 709 F.3d 1140, 1146 (Fed. Cir. 2013) (ODP is applicable where the asserted patent and the reference patent were "*filed by* 'the same inventive entity, or by *a different inventive entity having a common invento*r, and/or by a common assignee/owner.'" (quoting MPEP §



Honorable Tonianne J. Bongiovanni, U.S.M.J.                    June 6, 2025
                                                              Page 8

804(I)(A) (emphasis added)).  Plaintiffs have cited no precedent under which a post-expiration inventorship change made the changed patent unavailable in an ODP defense.

To the extent Plaintiffs maintain their position that the ODP defense is *not* available, then Defendants must be allowed to investigate why, with no explanation, he was removed as an inventor of those patents on the same day they expired and in a manner that Plaintiffs now argue moots the ODP defense.  ODP is an equitable doctrine, and this discovery is certainly relevant to Defendants' allegation that the issuance of the '562 patent is an "*unjust* timewise extension" of Dr. Helleday's inventions in the '701 and '530 patents.  *See, e.g., In re Cellect*, 81 F.4th at 1230 (emphasis added); *see also, Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1059 (Fed. Cir. 2020) ("We are mindful, however, of the existing complexities in applying the equitable doctrine of obviousness-type double patenting . . . ."); *Wyeth Holdings Corp. v. Sandoz, Inc.*, No. 09-cv-955-RGA, 2012 WL 1748008, at *4 (D. Del. Apr. 5, 2012) ("Sandoz moved for partial summary judgment pursuant to the equitable doctrine of obviousness-type double patenting…."). Moreover, Defendants have every right to challenge whether a particular prior art reference in fact qualifies as prior art based on the inventorship of that reference.  *See, e.g.*, *Google LLC v. IPA Techs. Inc.*, 34 F.4th 1081, 1085 (Fed. Cir. 2022) (evaluating "whether a reference is a work of others for the purposes of § 102(a)"); *Ethicon LLC v. Intuitive Surgical, Inc.*, No. 2020-1600, 2021 WL 960766 (Fed. Cir. Mar. 15, 2021) (evaluating "whether a reference patent is 'by another' for the purposes of 35 U.S.C. § 102(e)"); *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1356 (Fed. Cir. 2003) (remanding "for a determination of whether the portions of the [reference] patent relied on as prior art, and the subject matter of the claims in question of the [asserted] patents, represent the work of a common inventive entity" for purposes of assessing invalidity for obviousness).

***Second***, Plaintiffs argue that they have already produced discovery relevant to this inquiry in the form of documents from 2004 related to the work of Drs. Helleday and Curtin that led to the '701 and '530 patents.  But those are the documents that *supported* naming Dr. Helleday as an inventor.  Defendants are entitled to documents explaining why he was removed as an inventor *despite* the conception documents supporting his collaboration with Dr. Curtin.  Those are the documents Plaintiffs are withholding.

***Third***, Defendants' requests are narrowly tailored and specifically targeted to documents regarding the discrete issues surrounding the inventorship and/or inventorship correction of the '701 and '530 patents between specific entities.  They are targeted to communications between the relevant entities, including Plaintiffs, the owner of the '701 and '530 patents, Dr. Helleday, and Dr. Curtin regarding his removal as an inventor and the impact that change would have on the ODP defense.  (*See, e.g.*, *Plaintiffs' Responses to RFP Nos. 116-133* (Ex. U) at RFP No. 117 ("communications between Plaintiffs and Pfizer regarding inventorship of the Helleday '701 and '530 patents"), RFP No. 123 ("communications between Plaintiffs and Thomas Helleday regarding the removal of Thomas Helleday as an inventor from the Helleday '701 and '530 patents and the factual basis for the same"), RFP No. 127 ("communications between Plaintiffs and Nicola Curtin



Honorable Tonianne J. Bongiovanni, U.S.M.J.                    June 6, 2025
                                                                    Page 9

regarding inventorship of the Helleday '701 and '530 patents"), and RFP No. 128 ("communications between Plaintiffs and Nicola Curtin regarding the removal of Thomas Helleday as an inventor from the Helleday '701 and '530 patents and the factual basis for the same").)  This is not a fishing expedition.  It is a targeted effort to understand why Dr. Helleday and others requested for the first time that he be removed as an inventor on the day the patents expired.

*Finally*, Defendants' requests do not raise privilege issues.  Plaintiffs argued during the meet and confer process that the requests "encompass a great number of privileged communications" (*Plaintiffs' April 29 Letter* (Ex. V) at 2), but Plaintiffs also acknowledged they did not know what responsive, privileged documents exist because they did not conduct any search.  In any event, Defendants do not, at this time, seek the production of privileged documents.[3] They seek only a log of responsive, privileged materials.

## IV.    CONCLUSION

For the reasons above, Defendants submit that Plaintiffs should be compelled to search for and produce all responsive documents within the full scope of Defendants' requests, and produce a log of all responsive privileged documents within that same scope.

We thank Your Honor for your consideration and assistance in this matter.  Should Your Honor have any questions, we are available at your convenience.

Respectfully submitted,

*s/ James S. Richter*

James S. Richter

Cc: All Counsel of Record (by ECF)

---

[3] Defendants reserve the right to challenge any claim of privilege exerted over communications between AstraZeneca and third parties such as Pfizer and/or to seek the production of any privileged communications if those communications were in furtherance of a fraud that warrants piercing the attorney-client privilege.

