## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA UK LIMITED, ASTRAZENECA AB, KUDOS PHARMACEUTICALS LIMITED, THE UNIVERSITY OF SHEFFIELD, AND MSD INTERNATIONAL BUSINESS GMBH, <br><br> *Plaintiffs,* <br><br> v. <br><br> NATCO PHARMA LIMITED, SANDOZ INC., CIPLA LIMITED, CIPLA USA, INC., ZYDUS PHARMACEUTICALS (USA) INC., AND ZYDUS LIFESCIENCES LIMITED, <br><br> *Defendants.* | Honorable Robert Kirsch, U.S.D.J. <br><br> Civil Action No. 23-cv-796 (RK)(TJB) (Consolidated) <br><br> *Document filed electronically* <br><br> **CONFIDENTIAL – FILED UNDER SEAL** <br><br><br> **Motion Date: November 3, 2025** <br><br> **Oral Argument Requested** |

---

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND INVALIDITY CONTENTIONS**

---

James S. Richter
MIDLIGE RICHTER LLC
645 Martinsville Road
Basking Ridge, New Jersey 07920
*Counsel for Defendant*
*Natco Pharma Limited*


Theodora McCormick
Lauren B. Cooper
Alec Wong
BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, PC
Office One
4365 Route South, Suite 301
Princeton, New Jersey 08540
*Counsel for Defendants Zydus Lifesciences*
*Ltd. and Zydus Pharmaceuticals (USA) Inc.*

Loly G. Tor.
William E. Antonides, III
K&L GATES LLP
One Newark Center, 10th Floor
Newark, New Jersey 07102
*Counsel for Defendants Cipla USA, Inc. and*
*Cipla Limited*


Eric I. Abraham
William P. Murtha
Kristine L. Butler
HILL WALLACK LLP
21 Roszel Road
Princeton, New Jersey 08540
*Counsel for Defendant Sandoz, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................... iii

TABLE OF EXHIBITS......................................................................................................... v

I.    RESPONSE TO BACKGROUND ............................................................................ 2

II.   DEFENDANTS' PROPOSED AMENDMENT IS NOT FUTILE.................................... 5

      A.    Defendants adequately plead inequitable conduct.................................................... 5

      B.    Defendants adequately plead unclean hands and infectious unenforceability ........................................................................... 9

      C.    Defendants adequately plead antitrust violations ...................................................... 9

III.  Defendants did not unduly delay, and Plaintiffs will suffer no prejudice........................11

IV.   CONCLUSION.................................................................................................... 12

## TABLE OF AUTHORITIES

### Cases

*3D Med. Imaging Sys., LLC v. Visage Imaging, Inc.*,
  228 F. Supp. 3d 1331 (N.D. Ga. 2017) ...................................................................... 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................ 5

*Aurinia Pharms. Inc. v. Sun Pharm. Indus., Inc.*,
  No. 20-cv-19805, 2022 WL 3040950 (D.N.J. Aug. 2, 2022) ...........................................2, 5, 11

*Auxilium Pharms., Inc. v. Watson Lab'ys, Inc.*,
  No. 12-3084, 2013 WL 5503209 (D.N.J. Oct. 2, 2013) ...................................................... 7

*Consol. Aluminum Corp. v. Foseco Int'l Ltd.*,
  910 F. 2d 804 (Fed. Cir. 1990) ...................................................................... 8, 9

*Cozy, Inc. v. Dorel Juv. Grp., Inc.*,
  No. 21-10134, 2025 WL 1159065 (D. Mass. Mar. 31, 2025)........................................ 9

*Egenera, Inc. v. Cisco Sys., Inc.*,
  972 F.3d 1367 (Fed. Cir. 2020) ...................................................................... 1, 6, 7

*Equil IP Holdings LLC v. Akamai Techs., Inc.*,
  No. 22-677, 2025 WL 507330 (D. Del. Feb. 14, 2025)...................................................... 1, 7, 8, 9

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009)...................................................................... 4

*Fourte v. Countrywide Home Loans, Inc.*,
  No. 07-1363, 2009 WL 2998110 (D.N.J. Sept. 15, 2009) ........................................ 2

*Guardant Health, Inc. v. Found. Med., Inc.*,
  No. 17-1616, 2020 WL 2461551 (D. Del. May 7, 2020)........................................ 10

*In re EchoStar Commc'ns Corp.*,
  448 F.3d 1294 (Fed. Cir. 2006)........................................................................................ 4

*In re Rembrandt Techs. LP Pat. Litig.*,
  899 F.3d 1254 (Fed. Cir. 2018)........................................................................................ 6

*In re Revlimid & Thalomid Purchaser Antitrust Litig.*,
  No. 19-7532, 2024 WL 2861865 (D.N.J. Jun. 6, 2024)........................................ 10

*Lipocine Inc. v. Clarus Therapeutics, Inc.*,
  No. 19-622, 2020 WL 4794576 (D. Del. Aug. 18, 2020) ........................................11

*Luv n' Care, Ltd. v. Laurain*,
   98 F.4th 1081 (Fed. Cir. 2024) .................................................................................. 7

*Otsuka Pharm. Co. v. Torrent Pharm. Ltd.*,
   187 F. Supp. 3d 483 (D.N.J. 2016) ......................................................................10, 11

*Therasense Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) ........................................................................... 6, 7, 9

*TransWeb LLC v. 3M Innovative Props. Co.*,
   812 F.3d 1295 (Fed. Cir. 2016) .............................................................................. 10

*Ulead Sys. v. Lex Comput. & Mgmt. Corp.*,
   351 F.3d 1139 (Fed. Cir. 2003) ............................................................................ 6, 7

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
   382 U.S. 172 (1965).................................................................................................. 9

## Statutes

35 U.S.C. § 256......................................................................................................... 6

35 U.S.C. § 256(a) .................................................................................................... 6

## Rules

FED. R. CIV. P. 9(b)..................................................................................................... 1

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| FFF | August 7-27, 2025 Email Chain Between Defendants and Plaintiffs Regarding Production of Thomas Helleday's Royalty Agreement |
| GGG | Transcript of the Deposition of Michelle O'Neill (August 8, 2025) (excerpted) |
| HHH | Transcript of the Deposition of Steven Walls (August 22, 2025) (excerpted) |

Plaintiffs describe Defendants' inequitable conduct claims as "outrageous calumnies," "defamatory," "scandalous," and "baseless." (ECF 265 at 1, 3 ("Opp.").) Plaintiffs' rhetoric further supports Defendants' claims of the egregiousness of Plaintiffs' misconduct, discussed below (*infra* § I). But they do not argue that the court cannot possibly conclude based on the allegations in Defendants' answers that Dr. Helleday intentionally submitted knowingly false written statements to the PTO as part of a scheme to fraudulently maintain the extended term of the '562 patent, protect Dr. Helleday's multimillion-dollar royalty stream, and maintain Plaintiffs' monopoly over the olaparib market.

Plaintiffs' only defense on the merits is that the claim is futile "even if" these allegations are true, because this misconduct is beyond the Court's reach to remedy. (Opp. at 1.) Plaintiffs' position is apparently that an inventor can—with impunity—falsely change the inventorship of an issued patent if it would avoid a validity challenge. But that is not the law. As another court recently held when rejecting the "contention that incorrect inventorship cannot constitute inequitable conduct," "the Federal Circuit has not gone that far." *Equil IP Holdings LLC v. Akamai Techs., Inc.*, No. 22-677, 2025 WL 507330, at *2 (D. Del. Feb. 14, 2025). The Federal Circuit, in fact, specifically instructs that "the inequitable-conduct rules…provide a safety valve in the event of deceit" in connection with a correction of inventorship. *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1377 (Fed. Cir. 2020).

Plaintiffs also have no basis to argue that Defendants delayed in bringing this motion. In June 2025, Plaintiffs took the position that Defendants were not entitled to any fact discovery concerning the inventorship change because they were unable at that time to plead fraud-based inequitable conduct with the "particularity" required by Federal Rule 9(b). (ECF 215 at 2.) Now that Defendants have overcome Plaintiffs' objections and obtained certain relevant discovery from

1

Pfizer, Dr. Helleday and other witnesses in August 2025, Plaintiffs change their tune and argue that Defendants should have pled inequitable conduct sooner. The Court should not tolerate those hide-the-ball tactics. Defendants diligently sought discovery to understand whether Dr. Helleday "misrepresented or omitted material information with the specific intent to deceive…." (Opp. at 9.) When Defendants had that discovery in August 2025, they prepared their amended counterclaims with ample detail to allege the requisite specific intent to deceive, advised Plaintiffs of their intent to file this motion, and then filed it when the meet and confer process failed to produce an agreement. Plaintiffs allege no prejudice other than the mere possibility that their refusal to produce relevant documents might lead to additional discovery and that Defendants are seeking a modest adjustment to the case schedule.

Before the Court is a motion for leave to amend. "The standard to grant a motion for leave is liberal," "mandate[s] that amendments are to be granted freely in the interests of justice," and carries "a presumption in allowing the moving party to amend its pleadings." (ECF 258 at 16-17 (citations omitted).) Plaintiffs provide no basis to rebut that presumption here or to overcome the "heavy burden on opponents who wish to declare a proposed amendment futile." (*Id.* at 23 (quoting *Aurinia Pharms. Inc. v. Sun Pharm. Indus., Inc.*, No. 20-cv-19805, 2022 WL 3040950, at *8 (D.N.J. Aug. 2, 2022)).) As such, the Court should grant Defendants' motion.

## I.      RESPONSE TO BACKGROUND

Plaintiffs' view of the facts pled is irrelevant because "the Court must assume that [Defendants'] factual allegations are true and only ask whether those facts are sufficient to support a claim for relief." *Fourte v. Countrywide Home Loans, Inc.*, No. 07-1363, 2009 WL 2998110, at *9 (D.N.J. Sept. 15, 2009). Nonetheless, Defendants address some of Plaintiffs' statements to highlight their efforts to obscure the factual record.

2

## A.    The Invention and Inventorship Change

Plaintiffs act as though Drs. Helleday and Curtin were two scientists with little interaction, and that Dr. Curtin was "conducting separate experiments" that resulted in the '701 and '530 patents. (Opp. at 4-5.) But Defendants allege, with ample support, that Dr. Curtin was working in "collaboration" with Dr. Helleday. (ECF 258 at 6-7; ECF 258-2 ¶¶ 88-130.) Dr. Curtin did not "re-test[] her proprietary compounds and discover[] that they were particularly suitable for use in treating HR-defective cells" "without Dr. Helleday's involvement or participation." (Opp. at 5.) Dr. Helleday told Dr. Curtin to run those tests. (ECF 258 at 2, 7; ECF 258-2 ¶¶ 94-111.)

And while Dr. Helleday may not have known the chemical structure of AG14361, he knew what was important: it was a potent PARP-1 inhibitor, which is directly relevant to what Plaintiffs themselves describe as *his* discovery "that PARP-1 inhibitors could selectively kill HR-defective cancer cells." (Opp. at 4; *see* ECF 258-2 ¶¶ 95-96.) The chemical structure is so *un*important to *his* alleged invention that it is not disclosed in the April 2004 "second GB application" through which the Helleday/Curtin '701 and '530 patents claim priority. (Opp. at 4-6; *see* ECF 256-2; ECF 256-3; ECF 265-2.) That application states that "[t]he present *inventors* have surprisingly found that cells deficient in homologous recombination (HR) are hypersensitive to the PARP inhibitor, AG14361." (ECF 265-2 at 2:26-28.)

Plaintiffs say Dr. Curtin "courteously invited Dr. Helleday to be named as a co-inventor on her patent application." (Opp. at 1.) The lack of any citation for that statement is glaring. Plaintiffs ignore emails from the relevant time showing that it was Dr. Helleday who asked Dr. Curtin to be on the patent application, not the other way around. (ECF 258 at 6-8; ECF 258-2 ¶¶ 114-21.)

Plaintiffs omit that the December 2023 meeting between Dr. Helleday and Plaintiffs' litigation counsel—after Plaintiffs were aware of the double patenting defense—was the first time Dr. Helleday ever thought to question his inventorship on the '701 and '530 patents. (Opp. at 6-

3

7; ECF 258 at 11; ECF 258-2 ¶ 205.)  He retained separate counsel to help him save his patent but, "strange[ly]," is not paying their fees and does not know who is.  (Opp. at 7; ECF 258-2 ¶ 210.) Dr. Helleday and his lawyers at Groombridge Wu did not "negotiate[]" with the assignees of the '701 and '530 patents; they threatened them with a lawsuit, and the assignees agreed not to challenge the inventorship change on the day those patents expired and thus became valueless to their owners.  (Opp. at 7; ECF 258-2 ¶¶ 211-13.)

Plaintiffs also suggest that "Dr. Helleday was advised by counsel in connection with the correction of inventorship."  (Opp. at 6.)  If lawyers' involvement were determinative, then Dr. Helleday was also "advised by counsel in connection" with his original declarations in 2003-2006 stating that he *was* an inventor of the '701 and '530 patents.  (ECF 258 at 7-9; ECF 258-2 ¶¶ 118-31.)  To the extent Plaintiffs or Dr. Helleday allege his conduct was reasonable and in furtherance of the advice of counsel, then Defendants are entitled to full discovery of that information.  *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006) ("Once a party announces that it will rely on [an] advice of counsel [defense] . . . the attorney-client privilege is waived.").

### B.    Defendants' Investigation Leading To This Motion

Defendants did not delay for more than a year before bringing this motion.  They diligently investigated, in order to plead with particularity, the serious allegations at issue.  *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009) "[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity'… the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission….").

Following production of the inventorship change documents in December 2024, Defendants served targeted interrogatories and document requests on February 14, 2025, seeking discovery about the inventorship change.  (ECF 256-12.)  They also served a subpoena on Pfizer—

4

the owner of the '701 and '530 patents—on February 19, seeking the same.  (ECF 256-13.) Plaintiffs provided nothing in response to requests for documents about the inventorship change, which led to Defendants filing of a motion to compel the production of those documents.  (ECF 209, 210, 214, 215, 217.)

It was only in August 2025 that *Pfizer* produced some documents related to Dr. Helleday's motivation for changing his inventorship.  (ECF 258 at 15, 26-27.)  Defendants then deposed Dr. Helleday on August 15, which is the only date that Plaintiffs offered for his deposition.  (ECF 256-14.)  Plaintiffs and Dr. Helleday continue to obstruct discovery.  They did not produce his royalty agreement until after his deposition (Ex. FFF), and Dr. Helleday still refuses to provide any documents related to the inventorship change pursuant to a subpoena.  (ECF 258-45.)

Defendants notified Plaintiffs of their intent to pursue inequitable conduct claims on September 10, 2025, less than a month after they deposed Dr. Helleday.  Defendants filed the motion on September 29, after failing to reach agreement with Plaintiffs on the proposed claims.

## II.    DEFENDANTS' PROPOSED AMENDMENT IS NOT FUTILE

"The futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion." *Aurinia Pharms.*, 2022 WL 3040950, at *8.  Defendants need only "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Defendants have done that, and Plaintiffs cannot overcome the "heavy burden" to prove otherwise. *Aurinia Pharms.*, 2022 WL 3040950, at *8.

### A.    Defendants adequately plead inequitable conduct

Plaintiffs repeatedly mischaracterize the case law by implying that inequitable conduct carries a rigid, unyielding standard that, among other things, requires that the alleged conduct must occur during the prosecution of a patent application and affect initial patent issuance.  (*E.g.*, Opp.

5

at 8-10.)  But the standard is far more flexible than Plaintiffs suggest.  To prevail, Defendants need only "prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO."  *Therasense Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011).  The Federal Circuit adopted that approach because it is "sensitive to varied facts and equitable considerations" when courts are assessing the defense, and "it is also consistent with the early unclean hands cases—all of which dealt with egregious misconduct."  *Id.* at 1293.  Under that standard, none of Plaintiffs' legal arguments support denying this motion.

**First**, the Federal Circuit has expressly acknowledged that "the inequitable-conduct rules…provide a safety valve in the event of deceit" related to a correction of inventorship pursuant to 35 U.S.C. §256 can constitute inequitable conduct.  *Egenera, Inc.*, 972 F.3d at 1377.  Inventorship changes by definition occur in "issued patents."  35 U.S.C. §256(a).  Plaintiffs are thus incorrect to suggest that changing inventorship of an issued patent cannot constitute inequitable conduct.  *See Ulead Sys. v. Lex Comput. & Mgmt. Corp.*, 351 F.3d 1139, 1144 (Fed. Cir. 2003) (there is "no reason why the doctrine should not extend into…contexts, like the present one, where the allegation is that inequitable conduct has occurred after the patent has issued."); *3D Med. Imaging Sys., LLC v. Visage Imaging, Inc.*, 228 F. Supp. 3d 1331, 1338-39 (N.D. Ga. 2017) (finding that actions in post-issuance procedural matters constituted inequitable conduct).

Similarly, Plaintiffs argue that the *issuance* of the '562 patent has "no relation" to the inventorship change.  (Opp. at 16.)  But the issuance of the '562 patent was not the purpose of Dr. Helleday's and Plaintiffs' misconduct.  The purpose of the scheme was to ensure the survival of the '562 patent *after* it should have expired along with the '701 and '530 patents due to obviousness-type double patenting.  *See, e.g.*, *In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254, 1273 n.** (Fed. Cir. 2018) (in the context of issued patents, "statements critical to the

6

'survival of the patent' . . . can be material within the meaning of *Therasense*"); *see also Ulead*, 351 F.3d at 1146 (holding that a "false declaration of small entity status was material" to the "survival of the patent").

**Second**, there is no law suggesting that misconduct as to an *unasserted* patent (such as the '701 and '530 patents) cannot also lead to an inequitable conduct finding as to an *asserted* patent (here, the '562 patent). The rules of inequitable conduct have been applied to exactly that scenario. In *Equil IP Holdings LLC*, the court granted a motion for leave to add an inequitable conduct claim based on allegations involving an improper change of inventorship as to an unasserted prior art patent, with the intent of saving the asserted patent. 2025 WL 507330, at *1-*2. The patentee argued "that *Therasense* made Federal Circuit cases involving incorrect inventorship as a basis for inequitable conduct no longer good law." *Id*. at *2. The court disagreed and held that "the Federal Circuit has not gone that far." *Id*. (citing *Egenera, Inc.*, 972 F.3d at 1376-77).

**Third**, Plaintiffs allege that Defendants have not met "the applicable materiality standard." (Opp. at 9-10.) That is wrong. As Plaintiffs acknowledge (*Id*. at 11), affirmative egregious misconduct such as "perjury," the filing of "false affidavits," and "'deliberately planned and carefully executed scheme[s]' to defraud the PTO and the courts" are material. *Therasense*, 649 F.3d at 1292. In fact, all of those are "per se material." *See Luv n' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1097 (Fed. Cir. 2024) ("in cases of affirmative egregious misconduct, materiality is established per se, without need to prove its impact on the PTO's patentability determination") (internal citation omitted); *see also Auxilium Pharms., Inc. v. Watson Lab'ys, Inc.*, No. 12-3084, 2013 WL 5503209, at *4 (D.N.J. Oct. 2, 2013) (finding but-for materiality because "false claims to inventorship are highly material to patentability"); *Equil IP Holdings LLC*, 2025 WL 507330, at *1-*2 (permitting inequitable conduct claim based on improper inventorship change).

7

Defendants have, therefore, met the materiality standard in their amended pleadings. (ECF 258 at 23-25; *see also* ECF 258-2 ¶¶ 76-77, 88-254; ECF 258-42; ECF 258-43.)

Defendants have sufficiently pled materiality even in the absence of a *per se* rule. Plaintiffs argue that the Patent Office already rejected a double patenting defense based on the '701 and '530 patents when Dr. Helleday was an inventor. So, they argue, inventorship is immaterial to the defense. (Opp. at 16-18.) But if Plaintiffs and Dr. Helleday actually believed that, then why would he have needed to remove himself as an inventor? The answer is that Defendants have amassed a far stronger double patenting defense than the Patent Office considered during prosecution, and Plaintiffs and Dr. Helleday fear the real risk that it will prevail and end the extended term of the '562 patent. (*See* D.I. 258-2 ¶¶ 241-54.) If Plaintiffs are correct that removing Dr. Helleday as an inventor means the '701 and '530 patents are unavailable in the OTDP defense, then that inventorship change is most certainly material to the survival of claim 1 of the '562 patent.

**Fourth**, Plaintiffs try to leverage the "unprecedented"[1] nature of their egregious misconduct and contort the case law to argue that there is no legal basis to punish the alleged misconduct. But when assessing what the case law *actually* requires, Defendants have adequately pled infectious unenforceability. "[Dr. Helleday's and Plaintiffs'] inequitable conduct . . . ha[s] 'immediate and necessary relation' to the equity [Plaintiffs] seek[], namely enforcement of the ['562] patent[]." *Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F. 2d 804, 810-11 (Fed. Cir. 1990). Plaintiffs do not substantively dispute that proposition. Nor could they, as all three patents

---

[1] Inventorship changes in issued, unasserted patents in order to save an issued, asserted patent have led courts to permit inequitable conduct and unclean hands claims. *See, e.g.*, *Equil IP Holdings LLC*, 2025 WL 507330, at *1-2. The only thing unprecedented here are the steps taken to change the inventorship of expired patents, steps that Plaintiffs' own witnesses—patent attorneys with forty plus years of experience between them—have never heard of someone attempting. (Ex. GGG at 158:22-159:4; Ex. HHH at 269:8-11.)

are clearly related through claims of priority. *Therasense*, 649 F.3d at 1288 ("the taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and applications in the same technology family"). The alleged misconduct in falsely changing inventorship of the '701 and '530 patents was done for one reason only—to try to avoid a finding of invalidity for ODP of the '562 patent in this litigation. *See Consol. Alum.*, 910 F. 2d at 810-11.

### B.    Defendants adequately plead unclean hands and infectious unenforceability

Plaintiffs' allegation that unclean hands and inequitable conduct are mutually exclusive also fails. As the Federal Circuit stated, it would not limit the "flexible doctrine of equity" because "[t]o hold that unclean hands applies only to conduct before a court would be contrary to our precedent applying the doctrine to conduct before the PTO." *Id.* at 812. In fact, courts can consider unclean hands and inequitable conduct based on the same conduct. *See Cozy, Inc. v. Dorel Juv. Grp., Inc.*, No. 21-10134, 2025 WL 1159065, at *4-*5 (D. Mass. Mar. 31, 2025) (permitting claims of inequitable conduct and unclean hands); *Equil IP Holdings LLC*, 2025 WL 507330, at *2 (same).

### C.    Defendants adequately plead antitrust violations

Plaintiffs also misstate relevant antitrust law. According to Plaintiffs, a *Walker Process* antitrust claim can only exist if the "'562 patent itself was 'procured by' intentional fraud" and, in Plaintiffs' view, the '562 patent was not. (Opp. at 22 (cleaned up).) The facts pled by Defendants show otherwise: Dr. Helleday fraudulently submitted false declarations to the USPTO in connection with the '701 and '530 patents in an attempt to maintain the validity of the '562 patent in order *to procure* seven years of further patent monopoly for the '562 patent – precisely the type of conduct that raises a claim under *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965). (*See* ECF 258-2 ¶¶ 267-308.) Nothing in *Walker Process* or its progeny cited by Plaintiffs insulates fraudulent conduct just because it is mischievously done, as here, in the file history of related patents, rather than the unlawfully obtained patent itself.

Plaintiffs muster just one case to claim that the '562 patent is immune from fraud committed in connection with the '701 and '530 patents—*Guardant Health, Inc. v. Found. Med., Inc.*, No. 17-1616, 2020 WL 2461551 (D. Del. May 7, 2020). In *Guardant*, PGDx did "not really respond" to an argument that the conduct as to one patent "would not rise to the level of fraud" required. *Id.* at *10 n.18. By contrast, Defendants have pled that fraud in connection with the related '701 and '530 patents was done for the express purpose of procuring additional patent term for the '562 patent. (ECF 258-2 ¶¶ 276, 295, 301-02.) Moreover, the antitrust claim as to three other patents in *Guardant* not only survived, but the court rejected the same attack on fees and costs as antitrust injury that Plaintiffs mount here, noting "there is good authority suggesting such fees and costs amount to actionable injury in this context." *Guardant Health*, 2020 WL 2461551, at *11 (collecting cases). Indeed, the Federal Circuit settled this issue in *TransWeb LLC v. 3M Innovative Props. Co.*, holding "attorney fees incurred defending the infringement suit are antitrust injury" for a *Walker Process* claim. 812 F.3d 1295, 1312 (Fed. Cir. 2016).

Plaintiffs' three other attacks on antitrust injury likewise fail. First, the '464 patent is not analogous to the blocking patent in Plaintiffs' cases because it expires in 2027, i.e., years *before* the '562 patent will expire in 2031. (*See* ECF 258 at 22); *In re Revlimid & Thalomid Purchaser Antitrust Litig.*, No. 19-7532, 2024 WL 2861865, at *84 (D.N.J. Jun. 6, 2024) (blocking patents "expire[d] *after* Celgene's REMS Patents" on which the antitrust claim was based (emphasis added)). Second, if this dispute is sufficiently ripe to resolve Plaintiffs' prayer for injunctive relief on the '562 patent, antitrust claims based on the fraud used to maintain that patent are also ripe. *See TransWeb*, 812 F.3d at 1309 (finding *Walker Process* injury where the anticompetitive harm would occur in the future "had the suit been successful"). Third, Plaintiffs' truncated quote to *Otsuka Pharm. Co. v. Torrent Pharm. Ltd.*, 187 F. Supp. 3d 483, 486-87 (D.N.J. 2016), omits that

10

the court acknowledged "credence to Torrent's position" and granted Torrent "leave to amend" to build-out its fee-based injury allegations – so that Torrent could plead injury in the same manner that Defendants already have. *See id.* at 487 n.6.

### III.    Defendants did not unduly delay, and Plaintiffs will suffer no prejudice

Plaintiffs are wrong that "delay is undue when a motion to amend is filed 'three months or more from the time the defendant obtained critical information relating to an inequitable conduct claim.'" (Opp. at 25.)  The rest of their cited case holds that "[i]n light of the high standards of pleading and proof for inequitable conduct claims, courts in this district have regularly held that it is not unreasonable for patent challengers to postpone raising allegations of inequitable conduct until sufficient discovery has been conducted to enable the challenger [to] confirm its suspicions and gather the evidence necessary to sustain its claim." *Lipocine Inc. v. Clarus Therapeutics, Inc.*, No. 19-622, 2020 WL 4794576, at *3 (D. Del. Aug. 18, 2020); *see id.* at *5 ("[I]t would not be reasonable to require that Clarus have sought leave to add its inequitable conduct claims before the end of fact discovery.").  Similar circumstances exist here.  Defendants sought evidence of Dr. Helleday's *intent* to knowingly file false declarations with the PTO, evidence that did not come to light until August 2025 with Pfizer's document production and Dr. Helleday's deposition.

Even if there was delay, that "alone is insufficient grounds to deny an amendment." *Aurinia Pharms.*, 2022 WL 3040950, at *11.  Plaintiffs argue they will be prejudiced by new claims that rely entirely on facts *Plaintiffs* have had all along.  Their stated concern about re-opening discovery is unfounded.  Defendants have no intention to "reopen" discovery.  But the option for discovery should not be preemptively foreclosed should the Court grant Defendants' motions to compel additional discovery from Plaintiffs related to these defenses.  Plaintiffs have nothing beyond their own obstructive efforts to blame if additional discovery is needed at that time.  Finally, Defendants have suggested a modest two-month extension of the case schedule and trial-ready date to

11

incorporate the inequitable hands defense.  That leaves ample time for the case to proceed through a trial and a decision before the Defendants' earliest anticipated launch date.

## IV.    CONCLUSION

Defendants respectfully request that the Court grant leave for Defendants to amend their affirmative defenses, counterclaims, and invalidity contentions.

Dated: October 27, 2025

By: /s/ *James S. Richter*
James S. Richter (jrichter@midlige-richter.com)
**MIDLIGE RICHTER LLC**
645 Martinsville Road
Basking Ridge, New Jersey 07920
(908) 626-0622 (telephone)

*Of Counsel:*
Kevin Warner (kwarner@rmmslegal.com)
Paul J. Molino (pmolino@rmmslegal.com)
William A. Rakoczy (wrakoczy@rmmslegal.com)
Nicholas D. Bortz (nbortz@rmmslegal.com)
**RAKOCZY MOLINO MAZZOCHI SIWIK LLP**
6 West Hubbard Street, Suite 500
Chicago, Illinois 60654
(312) 527-2157 (telephone)

*Attorneys for Defendant/Counterclaim-Plaintiff
Natco Pharma Limited*

Eric I. Abraham (eabraham@hillwallack.com)
William P. Murtha (wmurtha@hillwallack.com)
Kristine L. Butler (kbutler@hillwallack.com)
**HILL WALLACK LLP**
21 Roszel Road
Princeton, NJ 08540
T: (609) 924-0808
F: (609) 452-1888

Mark H. Remus (mremus@crowell.com)
Laura A. Lydigsen (llydigsen@crowell.com)
Mary E. LaFleur (mlafleur@crowell.com)
**CROWELL & MORING LLP**
455 North Cityfront Plaza Drive
NBC Tower, Suite 3600
Chicago, IL 60611
T: (312) 321-4200

12

F: (312) 321-4299

Ryan H. Seewald (rseewald@crowell.com)
**CROWELL & MORING LLP**
1601 Wewatta Street, Suite 815
Denver, CO 80202
T: (303) 524-8661

*Attorneys for Defendant Sandoz Inc.*

Loly G. Tor (loly.tor@klgates.com)
William E. Antonides, III
(bill.antonidesIII@klgates.com)
**K&L GATES LLP**
One Newark Center, 10th Floor
Newark, NJ
T: (973) 848-4026
F: (973) 848-4001

*Of Counsel:*
Anil H. Patel (anil.patel@klgates.com)
**K&L GATES LLP**
609 Main Street, Suite 4150
Houston, TX 77002
T: (713) 815-7300
F: (713) 815-7301

Elizabeth Weiskopf
(elizabeth.wesikopf@klgates.com)
Jenna Bruce (jenna.bruce@klgates.com)
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
T: (206) 623-7580
F: (206) 623-7022

*Attorneys for Defendants/Counterclaim-Plaintiffs
Cipla Limited and Cipla USA, Inc.*

Theodora McCormick
Lauren B. Cooper
Alec Wong

13

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
Office One
4365 Route 1 South, Suite 301
Princeton, New Jersey 08540
T: (609) 490-4860
F: (732) 242-8051
tmccormick@bakerdonelson.com
lcooper@bakerdonelson.com
twong@bakerdonelson.com

*Of Counsel:*
Michael J. Gaertner
James T. Peterka
Emily L. Savas
David M. Knapp
Hannah J. Thomas
**BUCHANAN INGERSOLL & ROONEY P.C.**
125 South Wacker Drive
Chicago, Illinois 60606
(312) 261-8777
michael.gaertner@bipc.com
james.peterka@bipc.com
emily.savas@bipc.com
david.knapp@bipc.com
hannah.thomas@bipc.com

*Attorneys for Zydus Pharmaceuticals (USA) Inc. and Zydus Lifesciences Ltd.*

14